# FOR PUBLICATION

FILED & ENTERED

FEB 29 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY rust        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>HVI CAT CANYON, INC.,<br><br>　　　　　Debtor.<br>_____<br><br>MICHAEL A. McCONNELL, Chapter 7<br>Trustee,<br><br>　　　　　Plaintiff,<br><br>　　　　vs.<br><br>RANDEEP GREWAL, individually,<br>SUSAN WHALEN, individually, M.<br>ERNESTO OLIVARES, individually, GIT,<br>INC., a Colorado corporation, GOGH,<br>LLC, a Colorado limited liability company,<br>CALIFORNIA ASPHALT PRODUCTION,<br>INC., a California corporation, GLR, LLC,<br>a Delaware limited liability company, GRL,<br>LLC, a Delaware limited liability company,<br>GTL1, LLC, a Colorado limited liability<br>company, GREVINO, LLC, a Delaware<br>limited liability company, CA'DEL<br>GREVINO, LLC, a Delaware limited<br>liability company, and DOES 1 through 60, | Case No.: 9:19-bk-11573-MB<br><br>Chapter 7<br>(converted from chapter 11)<br><br>Adv. Proc. No.:  9:21-ap-01025-MB<br><br>**ORDER AND DECISION DENYING IN PART AND GRANTING IN PART MOTION OF DEFENDANTS RANDEEP S. GREWAL, SUSAN WHALEN AND ERNESTO OLIVARES TO DISMISS FIRST AMENDED COMPLAINT [ADV. DKT. 68]** |

1  inclusive,

2          Defendants.

3

4

5                  **I.      INTRODUCTION**

6          The chapter 7 trustee in the underlying bankruptcy case filed this adversary proceeding

7  against three individuals who are insiders of the debtor, HVI Cat Canyon, Inc. (the "Debtor") and

8  against various corporate affiliates of the Debtor.  Essentially, the trustee alleges that (i) the

9  Debtor's chief executive officer, Randeep Grewal ("Grewal") spent ten years siphoning off the

10 Debtor's assets for his own benefit and to the detriment of creditors of the Debtor and (ii) Susan

11 Whalen ("Whalen") and Ernesto Olivares ("Olivares" and, collectively with Grewal and Whalen,

12 the "Individual Defendants") participated in Grewal's scheme to the detriment of the Debtor and its

13 creditors.  The Trustee alleges that the Individual Defendants caused at least $100 million in

14 damages to the Debtor, which he seeks to recover pursuing breach of fiduciary duty, fraudulent

15 transfer and preference theories, and other related causes of action.

16         The Individual Defendants contend the trustee's complaint must be dismissed for failing to

17 state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Having considered

18 the parties' arguments, the record, including the parties' supplemental legal briefings filed in

19 January 2024, and the applicable law, the motion to dismiss is granted in part and denied in part,

20 as follows:

21                  **II.     JURISDICTION**

22         The Court has jurisdiction over all civil proceedings (1) "arising under title 11," i.e., any

23 proceedings to enforce rights created by the Bankruptcy Code, (2) "arising in" a bankruptcy case,

24 i.e., other proceedings that would not exist outside a bankruptcy case, such as case administration,

25 or (3) "related to" a bankruptcy case, i.e., any proceedings the outcome of which could

26 "conceivably" have any effect on the bankruptcy estate.  *See* 28 U.S.C. § 1334(b); *In re Harris*, 590

27 F.3d 730, 737 (9th Cir. 2009); *In re Marshall*, 600 F.3d 1037, 1054 (9th Cir. 2010); *In re Fietz*, 852

28 F.2d 455, 457 (9th Cir. 1988) (adopting "related to" test of *Pacor, Inc. v. Higgins*, 743 F.2d 984

1  (3rd Cir. 1984)).  Because the outcome of the adversary proceeding could affect the size of the

2  bankruptcy estate, this Court has subject matter jurisdiction over this proceeding.

### III.    PROCEDURAL BACKGROUND

#### A.  The Underlying Bankruptcy Case

5      The Debtor filed its voluntary chapter 11 petition on July 25, 2019 (the "Petition Date").

6  Case Dkt. 1.  On October 16, 2019, the Court ordered the appointment of a chapter 11 trustee and,

7  thereafter, Michael A. McConnell ("McConnell") was appointed trustee.  Case Dkt. 409, 418.  On

8  December 17, 2020, the Court granted McConnell's motion to convert the case to chapter 7. Case

9  Dkt. 1531.  Subsequently, on or about March 14, 2023, McConnell resigned as trustee, and Brad D.

10  Krasnoff was appointed successor trustee ("Krasnoff" or the "Trustee") on March 16, 2023. Case

11  Dkt. 1983, 1988.

#### B.  This Adversary Proceeding

13      McConnell filed his complaint in this action on July 23, 2021, alleging claims for [1]

14  Breach of Fiduciary Duty, [2] Aiding and Abetting Breach of Fiduciary Duty, [3] § 544(b)

15  Avoidance and Recovery of Fraudulent Transfers (Actual Fraud), [4] § 544(b) Avoidance and

16  Recovery of Fraudulent Transfers (Constructive Fraud), [5] § 548 Avoidance and Recovery of

17  Fraudulent Transfers (Actual Fraud), [6] § 548 Avoidance and Recovery of Fraudulent Transfers

18  (Constructive Fraud), [7] Aiding and Abetting Fraudulent Transfers, [8] § 547 Avoidance and

19  Recovery of Preferential Transfers, [9] Negligence — Legal Malpractice, [10] Breach of Contract,

20  [11] Unjust Enrichment, and [12] Declaratory and Equitable Relief — Alter-Ego / Single Business

21  Enterprise (the "Original Complaint") against eleven named defendants:  Grewal, Whalen

22  ("Whalen"), Olivares, GIT, Inc. ("GIT"), GOGH, LLC ("GOGH"), California Asphalt Production,

23  Inc. ("CAP"), GLR, LLC ("GLR"), GRL, LLC ("GRL"), GTL1, LLC ("GTL1"), Grevino, LLC

24  ("Grevino") and Ca'Del Grevino, LLC ("CDG") (collectively, the "Defendants").  Adv. Dkt. 1.

25  Over the next sixteen months, the Defendants and McConnell entered into seven stipulations

26  extending the deadline for the Defendants to respond to the Original Complaint.  Adv. Dkt. 20, 27,

27  32, 37, 42, 49, 56.

28

1

On October 28, 2022, McConnell filed his amended complaint (the "FAC"), which is the operative complaint in this proceeding, against the same Defendants.  Adv. Dkt. 60.  The FAC omits the claim for aiding and abetting fraudulent transfers, and adds two new causes of action for civil contempt based on alleged violations of the automatic stay and certain cash collateral orders, but otherwise asserts the same causes of action as the Original Complaint.  Following an additional stipulation between the parties extending the Defendants' deadline to respond to the FAC, on January 27, 2023, each of the Defendants moved to dismiss the FAC.  Adv. Dkt. 68, 70, 73, 75, 76. On that same date, Grewal, Whalen and Olivares (collectively, the "Individual Defendants") moved to withdraw the reference of this adversary proceeding to the United States District Court, which was joined by Grevino, CDG, GLR and GRL.  Case 2:23-00658-DMG, Dkt. 1, 4, 5.  That motion remains pending.  On January 27, 2023, the Individual Defendants also moved for a stay of this proceeding while their motion to withdraw the reference is pending, which the Court denied.  Adv. Dkt. 72, 99.

On January 5, 2024 and January 10, 2024, Grewal and the Trustee filed additional pleadings discussing a Tenth Circuit Court of Appeals decision issued on December 19, 2023, on the issue of whether Colorado law recognizes the adverse domination doctrine regarding the tolling of breach of fiduciary duty claims governed by Colorado law.  Adv. Dkt. 220, 221.

## IV.    ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The gravamen of the FAC is that Grewal, as the sole director, chief executive officer ("CEO") and beneficial owner of the Debtor, caused the Debtor to take on massive debt, siphoned the assets of the Debtor to himself, either directly or via various corporate affiliates, all of which were also controlled and managed by Grewal.  FAC, ¶¶ 5, 16, 19-21, 33.

### A.  Factual Allegations Against Grewal

Grewal orchestrated numerous prepetition transactions that were either fraudulent or breaches of his fiduciary duties to the Debtor and harmed the Debtor; there were four principal such transactions:

1 – THE OVERRIDING ROYALTY PAYMENTS TO GRL FOR GREWAL'S BENEFIT:  Between 2010 and 2018, Grewal caused the Debtor to pay $9.95 million to GRL in the form of

2

"Overriding Royalty" payments, ostensibly as part of Grewal's compensation for serving as the Debtor's CEO. FAC, ¶¶ 40, 41, 59. Of this amount, at least $330,346 was paid within one year of the Petition Date, as disclosed in the Debtor's Statement of Financial Affairs. FAC, ¶¶ 75, 123. GRL received the Overriding Royalty payments regardless of the financial performance of the Debtor and regardless of the value of Grewal's services. FAC, ¶¶ 42, 61. From 2010 to 2018, the Debtor's financial performance was poor as it suffered annual losses and was insolvent for much of the time. FAC, ¶¶ 61, 62.

2 – THE $79 MILLION GIT NOTE: Grewal caused the Debtor to take on $79 million of GIT's debt in exchange for a promissory note (the "GIT Note") requiring GIT to repay the Debtor by 2015. FAC, ¶¶ 44-45. Grewal caused the Debtor to extend the maturity date to 2030, for no consideration to the Debtor, and then caused the Debtor to cancel the GIT Note in exchange for a tax sharing agreement, which proved worthless to the Debtor. FAC, ¶¶ 46-49.

3 – THE DEBTOR'S LEASES TRADED TO FUND GREWAL'S PURCHASE OF A VINEYARD: Grewal caused the Debtor to assign various leases it owned to a third party, in exchange for $10 million paid to Grewal's company, Resolvco LLC, which it used to purchase a vineyard (the "Vineyard") for Grewal, titled in the name of Grevino. FAC, ¶¶ 50-53. The Debtor received no consideration for the assignment of its leases. FAC, ¶ 52.

4 – THE $13 MILLION LOAN TO GIT: Grewal caused the Debtor to lend $13 million to GIT which GIT never repaid. FAC, ¶¶ 55-56.

Additionally, the Debtor made various avoidable transfers to GRL ($9.95 million), GIT ($13 million and $2.3 million), Grevino and CDG (the Vineyard purchased for $10 million), GTL1 ($2.2 million), CAP ($7.2 million), and GLR ($112,000). FAC, ¶¶ 59, 63, 68, 70, 77-80. Grewal is the alter ego of these corporate defendant transferees and liable for the avoidable transfers to them. FAC, ¶¶ 21, 73.

Postpetition, Grewal caused GIT to improperly offset amounts it owed to the Debtor against sums allegedly due to GIT from the Debtor for the prepetition claims of insiders; this reduced the amount of funds flowing to the bankruptcy estate. FAC, ¶¶ 164, 165. Postpetition, Grewal caused

the Debtor to make various payments to him and to the other corporate defendants in violation of the various cash collateral orders in effect at the time of the transfers.  FAC, ¶¶ 173-177.  Finally, Grewal has moved or transferred the Debtor's assets into a number of unknown trusts, partnerships and entities, who are represented by the DOE defendants in the FAC.  FAC, ¶ 26.

**B.  Factual Allegations Against Olivares**

Olivares served as the chief financial officer ("CFO") of the Debtor between 2014 and 2020.  FAC, ¶ 7.  Olivares also serves as the CFO of GIT.  FAC, ¶ 164.  In his role as CFO, he facilitated Grewal's breaches of fiduciary duty including the Overriding Royalty payments to GRL, the cancellation of the $79 million GIT Note, the trading of the Debtor's leases for no consideration to fund Grewal's purchase of the Vineyard and the $13 million loan to GIT.  FAC, ¶ 92.  Postpetition, Olivares caused GIT to offset amounts it owed to the Debtor against amounts the Debtor allegedly owed to GIT on account of prepetition claims of insiders; this reduced the amount of funds flowing to the bankruptcy estate. FAC, ¶¶ 164, 165.  Postpetition, Olivares caused the Debtor to make various payments to Grewal and to the other corporate defendants in violation of the various cash collateral orders in effect at the time of the transfers.  FAC, ¶¶ 173-177.

**C.  Factual Allegations Against Whalen**

Between 2005 and 2017, Whalen served as a senior vice president, secretary and general counsel of the Debtor; she served as outside counsel to the Debtor between 2017 and 2020.  FAC, ¶¶ 6, 137.  At the same time that she served as legal counsel to the Debtor, she represented the corporate defendants and Grewal individually.  FAC, ¶¶ 34, 138.  As counsel to the Debtor, Whalen was required to avoid representing interests adverse to the Debtor; she breached this duty by (i) representing the Debtor and the corporate defendants simultaneously on transactions among them, (ii) counselling the Debtor to cancel the $79 million GIT Note for no consideration, (iii) counseling the Debtor to continue making the Overriding Royalty payments while it was insolvent (or nearing insolvency), (iv) counseling the Debtor to make the fraudulent transfers to the corporate defendants, and (v) failing to advise the Debtor of the various conflicts of interest between Grewal and the Debtor and her own conflicts of interest due to the simultaneous representation.  FAC, ¶¶ 139-140.

Postpetition, Whalen directed Olivares to cause GIT to offset amounts it owed to the Debtor against amounts the Debtor allegedly owed to GIT on account of prepetition claims of insiders; this reduced the amount of funds flowing to the bankruptcy estate. FAC, ¶¶ 164, 165.  Postpetition, Whalen directed Olivares to cause the Debtor to make various payments to Grewal and to the other corporate defendants in violation of the various cash collateral orders in effect at the time of the transfers.  FAC, ¶¶ 173-177.

Finally, during the year preceding the Petition Date, Whalen received preferential payments for legal services rendered to the Debtor.  FAC, ¶ 119.

**D.  Causes of Action Alleged Against the Individual Defendants**

GREWAL:  The FAC alleges that Grewal breached his fiduciary duties to the Debtor based on, among other things, the Overriding Royalty payments to GRL, causing the Debtor to take on $79 million of GIT's debt and ultimately cancelling the GIT Note, trading the Debtor's leases to facilitate Grewal's purchase of the Vineyard and causing the Debtor to loan GIT $13 million.  FAC, ¶¶ 85, 86.  The FAC alleges Grewal's breaches damaged the Debtor in excess of $100 million. FAC, ¶ 87.  Because Grewal was in complete control of the Debtor at all relevant times, the FAC alleges the Debtor was unable to take action against Grewal until McConnell was appointed trustee in the bankruptcy case.  FAC, ¶ 88.  The FAC also alleges that Grewal is liable for the fraudulent and preferential transfers from the Debtor to the corporate entities, either as a transferee or as the alter ego of the transferee.  FAC, ¶¶ 21, 73, 95-100, 102-106, 108-111, 113-116, 118, 127-135, 153-161.

The FAC alleges the Court should find Grewal in civil contempt for violating the automatic stay and for violating various cash collateral orders based on Grewal causing GIT to offset amounts it owed to the Debtor postpetition and causing the Debtor to make postpetition payments to insiders.  FAC, ¶¶ 164-171, 173-182.  Finally, the FAC alleges a claim for unjust enrichment against Grewal based on his receipt (whether direct or indirect) of the assets transferred by the Debtor as benefits to which he was not entitled.  FAC, ¶¶ 149-151.

OLIVARES:  The FAC alleges that Olivares is liable for aiding and abetting Grewal's breaches of his fiduciary duties to the Debtor.  FAC, ¶¶ 92-93.  Based upon Olivares causing GIT

1  to offset amounts it owed to the Debtor postpetition, the FAC alleges Olivares should be held in

2  civil contempt of the automatic stay.  FAC, ¶¶ 164-171.  Finally, the FAC alleges a claim for unjust

3  enrichment against Olivares.  FAC, ¶¶ 149-151.

4      WHALEN:  The FAC alleges that Whalen received payments on account of legal services

5  provided to the Debtor during the year preceding the Petition Date, which are avoidable preferences

6  under section 547(b) of the Bankruptcy Code.  FAC, ¶¶ 119, 127-134.  The FAC asserts a legal

7  malpractice claim against Whalen based on her simultaneous representation of the Debtor, Grewal

8  and the corporate defendants.  FAC, ¶¶ 137-141.  The FAC alleges the Court should find Whalen in

9  civil contempt for violating the automatic stay and for violating various cash collateral orders based

10  on Whalen directing GIT to offset amounts it owed to the Debtor postpetition and directing the

11  Debtor to make postpetition payments to insiders.  FAC, ¶¶ 164-171, 173-182.  Finally, the FAC

12  alleges a claim for unjust enrichment against Whalen based on the alleged preferential payments

13  she received, to which she was not entitled.  FAC, ¶¶ 149-151.

14                      **V.    LEGAL STANDARDS**

15      **A.  Federal Rule of Civil Procedure 12(b)(6)**

16      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the

17  allegations set forth in the complaint. "A Rule 12(b)(6) dismissal may be based on either a 'lack of

18  a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal

19  theory.'" *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting

20  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

21      Courts cannot consider matters outside of the four corners of the complaint on a Rule

22  12(b)(6) motion to dismiss.  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th

23  Cir. 2019) (declining to consider plaintiff's allegations in opposition to motion to dismiss which

24  were not included in complaint); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925

25  (9th Cir. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to

26  dismiss.").

27      In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the

28  light most favorable to the plaintiff and accept all factual allegations as true.  *Glazer Capital Mgmt.*

1    *L.P. v. Forescout Tech., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023).  "[A] well-pleaded complaint may

2    proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

3    recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416

4    U.S. 232, 236 (1974)).  "[S]o long as the plaintiff alleges facts to support a theory that is not

5    facially implausible, the court's skepticism is best reserved for later stages of the proceedings when

6    the plaintiff's case can be rejected on evidentiary grounds."  *Balderas v. Countrywide Bank, N.A.*,

7    664 F.3d 787, 791 (9th Cir. 2011) (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057

8    (9th Cir. 2008)).  On the other hand, the court is not bound by conclusory statements, statements of

9    law, and unwarranted inferences cast as factual allegations. *Twombly*, 550 U.S. at 555-57; *Clegg v.*

10   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Nor is the court required to accept

11   as true factual allegations contradicted by matters properly subject to judicial notice or by exhibits

12   attached to the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

13   *Butler v. Los Angeles Cty.*, 617 F.Supp.2d 994, 999 (C.D. Cal. 2009).

14       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

15   factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

16   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

17   action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "In practice, a complaint . . .

18   must contain either direct or inferential allegations respecting all the material elements necessary to

19   sustain recovery under some viable legal theory." *Id*. at 562 (quoting *Car Carriers, Inc. v. Ford*

20   *Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

21       In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on the *Twombly*

22   standard: "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face. . .. A claim has facial

24   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

25   inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the

26   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678

27   (citations and internal quotation marks omitted).  "The requirement that a plaintiff provide

28   'plausible grounds' for [his] claim does not, however, 'impose a probability requirement at the

1  pleading stage.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting
2  *Twombly*, 550 U.S. at 556).

3       If dismissal is granted under Rule 12(b)(6) or 9(b), leave to amend should be allowed unless
4  the pleading may not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d
5  1122, 1130 (9th Cir. 2000); *Vess*, 317 F.3d at 1108 (9th Cir. 2003).  On the other hand, if
6  amendment would be futile, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386,
7  393 (9th Cir. 1996).

8       **B.  Federal Rule of Civil Procedure 9(b)**

9       The Federal Rules of Civil Procedure impose heightened pleading requirements on claims
10  of fraud.  *See* Fed. R. Civ. P. 9(b) (applicable here pursuant to Fed. R. Bankr. P. 7009).  Under Rule
11  9(b), a plaintiff "must state with particularity the circumstances constituting fraud," but can allege
12  generally "[m]alice, intent, knowledge, and other conditions of a person's mind." *Twombly*, 550
13  U.S. at 559.  The particularity requirement of Rule 9 "has been interpreted to mean the pleader
14  must state the time, place and specific content of the false representations as well as the identities
15  of the parties to the misrepresentation." *Miscellaneous Serv. Workers, etc. v. Philco-Ford Corp.,*
16  *WDL Div.*, 661 F.2d 776, 777 (9th Cir. 1981).  "Averments of fraud must be accompanied by the
17  who, what, when, where and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317
18  F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted); *Walling v. Beverly Enter.*, 476 F.2d
19  393, 397 (9th Cir. 1973).

20       "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of
21  the particular misconduct which is alleged to constitute the fraud charged so that they can defend
22  against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*,
23  780 F.2d 727, 731 (9th Cir. 1985). "It also prevents the filing of a complaint as a pretext for the
24  discovery of unknown wrongs and protects potential defendants—especially professionals whose
25  reputations in their fields of expertise are most sensitive to slander—from the harm that comes
26  from being charged with the commission of fraudulent acts." *Id.*

27       A "recognized exception to Rule 9(b)'s particularized pleading requirement" applies where
28  "the facts constituting the circumstance of the alleged fraud are peculiarly within the defendant's

1  knowledge or are readily obtainable by him." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.

2  1993) *citing Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989);

3  *Englewood Lending Inc. v. G&G Coachella Invs., LLC*, 2009 WL 10670409, at *5–6 (C.D. Cal.,

4  July 6, 2009) (relaxing Rule 9(b)'s specificity requirements "because the specific information

5  relating to the purported fraudulent transfer lies" with the defendant).  Additionally, some courts

6  apply a more liberal standard where the plaintiff is a bankruptcy trustee, an outsider to the allegedly

7  fraudulent transaction. *Smith ex rel. Ests. of Bos. Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F.

8  Supp. 2d 1180, 1201 (D. Ariz. 2001) *aff'd* 421 F.3d 989 (9th Cir. 2005) ("A more liberal standard

9  for pleading fraud with particularity is applied in bankruptcy cases. . .. This less stringent standard

10  is predicated upon the fact that it is often the trustee, a third party, who is pleading fraud based on

11  second-hand information"); *AT & T Corp. v. Walker*, 2006 WL 2927659, at *1 (W.D. Wash. Oct.

12  12, 2006) (same); *In re O.P.M. Leasing Servs., Inc.*, 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983)

13  ("[G]reater liberality should be afforded in the pleading of fraud in a bankruptcy case. As

14  mentioned earlier, this liberality is required because it is often the Trustee, a third-party outsider to

15  the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the

16  estate and all of its creditors.").

17      Rule 9(b) does not apply to fraudulent transfer claims based on constructive fraud.  *Screen*

18  *Cap. Int'l Corp. v. Libr. Asset Acquisition Co.*, 510 B.R. 266, 274 (C.D. Cal. 2014) ("Rule 9(b)'s

19  heightened pleading standards are not generally applied to claims of avoidance and recovery of

20  constructively fraudulent transfers, as they do not require proof of fraud."); *In re Aletheia Rsch. &*

21  *Mgmt., Inc.*, 2015 WL 8483728, at *5 n. 5 (B.A.P. 9th Cir., Dec. 10, 2015) (heightened pleading

22  standard of Rule 9(b) does not apply to constructive fraud claims).

23      Whether Rule 9(b) applies to actually fraudulent transfer claims is less clear.  *Compare*

24  *Nishibun v. Prepress Solutions Inc.*, 111 F.3d 138 (9th Cir.1997) (unpublished) (applying Civil

25  Rule 9(b) to an actually fraudulent transfer claim under California law, without discussion) *with In*

26  *re Mihranian*, 2017 WL 2775036, at *7–8 (B.A.P. 9th Cir., Jun. 26, 2017) ("We question whether

27  all actual fraudulent transfer claims sound in fraud, because the controlling fraudulent transfer

28  statutes state in the disjunctive that an actual fraudulent transfer occurs when the debtor makes a

transfer with the actual intent to hinder, delay or defraud. See § 548(a)(1)(A); Cal. Civ. Code § 3439.04; see also *Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 232 (9th Cir. BAP 2007), *aff'd in part and adopted*, 551 F.3d 1092 (9th Cir. 2008). We do not see why harboring an intent to hinder or delay your creditors would sound in fraud.  That being said, it is unnecessary for us to resolve the issue of when, if ever, Civil Rule 9(b) should be applied to actual fraudulent transfer claims.").

## VI.    DISCUSSION

The Individual Defendants' *Motion to Dismiss* (the "Motion") seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Adv. Dkt. 68

### A.  Breach of Fiduciary Duty Cause of Action Against Grewal

As a threshold matter, Grewal and the Trustee disagree on whether Colorado law or California law governs the Trustee's breach of fiduciary duty claims.  As described below, Colorado and California law appear to differ on several material matters relevant to those claims. Grewal contends that Colorado law applies because the Debtor is a Colorado corporation.  Motion, at 14; FAC, ¶ 19 ("The Debtor is a Colorado corporation . . . .").[1]  The Trustee contends California law applies because California has a more significant relationship to the Debtor and the acts alleged in the FAC.  *Plaintiff's Omnibus Opposition* (the "Opposition"), Adv. Dkt. 111, at 15.

### 1.  Grewal as Sole Equity Interest Holder Versus the Trust Fund Doctrine

Grewal contends that he cannot be liable for breach of fiduciary duty as a matter of law because he was the beneficial owner of the Debtor at all relevant times.  Motion, at 14-15.  In his capacity as shareholder, he approved the conduct on which the breach of fiduciary duty claims rely, and therefore, that conduct cannot give rise to a claim for breach of fiduciary duty.  *Id.*, *citing Pueblo Foundry & Mach. Co. v. Lannon*, 68 Colo. 131, 135 (1920) ("A corporation has no such separate entity as will permit it to act counter to the unanimous desire of its stockholders."); *Mackey v. Burns*, 16 Colo. App. 6, 21 (1901) ("Corporate acts which may be lawfully done, and are done, by the consent or authority of all the then stockholders cannot be questioned by one who

---

[1]  Unless otherwise stated, all page references are to the Court's electronic filing system page numbers.

1    afterwards becomes a share owner.").  Grewal acknowledges that under California law an

2    exception exists to this rule because the officers and directors of an insolvent corporation owe

3    fiduciary duties to creditors under the "trust fund doctrine."  Motion, at 15 *citing Berg & Berg*

4    *Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020 (2009).  He contends that Colorado eliminated the

5    trust fund doctrine by adoption of Colorado Revised Statute section 7-108-401(4) in 2006:

6                A director or officer of a corporation, in the performance of duties in

7                that capacity, does not have any fiduciary duty to any creditor of the

8                corporation arising only from the status as a creditor, whether the

9                corporation is solvent or insolvent.

10    Colo. Rev. Stat. § 7-108-401(4).

11        The Trustee disagrees with Grewal's interpretation of Colorado law, arguing that the statute

12    does not eliminate the existence of a fiduciary duty but requires that a creditor asserting a breach do

13    so derivatively.  Opposition, at 17.  Ultimately, the Trustee asserts that Colorado law — and

14    resolution of whether it recognizes the trust fund doctrine — is not relevant to his breach of

15    fiduciary duty claim because it is governed by California law.  Opposition, at 16-17.

16        **2.    The Applicable Statute of Limitations and Whether the Adverse**

17        **Domination Doctrine Tolls the Running of the Applicable Limitations**

18        **Period**

19        Grewal contends that Colorado law requires breach of fiduciary duty claims to be brought

20    within three years of the breach, and here, the four principal breaches are alleged to have occurred

21    more than three years before the 2019 Petition Date.  Motion, at 16-20.  The Trustee contends that

22    California's four-year statute of limitations applies and that California recognizes the "adverse

23    domination" doctrine, which tolls the running of the limitations period while the defendants are in a

24    position to conceal their wrongdoing and prevent the corporation from seeking redress. Opposition,

25    at 21-23 *citing F.D.I.C. v. Jackson*, 133 F.3d 694, 699 (9th Cir. 1998) (holding that adverse

26    domination doctrine applies to director's fraudulent and negligent conduct); *San Leandro Canning*

27    *Co. v. Perillo*, 211 Cal. 482, 487 (1931) (finding that it is a "well-settled principle of [California]

28    law[ ] that the statute of limitations does not commence to run against unlawful acts and

expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds").[2]  The Trustee also argues that consideration of any tolling doctrine is premature at the pleading stage because it often depends on matters outside the pleadings.  Opposition, at 22 *citing Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).

### 3.  The Viability of the Exculpation Clause in the Debtor's Articles of Incorporation.

Grewal contends that the Debtor's Articles of Incorporation include an exculpatory provision which bars the Trustee's breach of fiduciary duty claims based on non-intentional conduct and that the exculpatory provision is enforceable under Colorado law.  Motion, at 21-22. The Trustee argues that California law bars exculpatory clauses for "acts or omissions that show a reckless disregard for the director's duty to the corporation or its shareholders in circumstances in which the director was aware, or should have been aware, in the ordinary course of performing a director's duties, of a risk of serious injury to the corporation or its shareholders." Opposition, at 21 *quoting* Cal. Corp. Code § 204(a)(10)(iv).

### 4.  Choice of Law Rules

The parties' briefing amply demonstrates that actual conflicts exist between California law and Colorado law on issues crucial to the FAC's breach of fiduciary duty claims against Grewal. Not surprisingly, the parties disagree on which choice of law rules apply to resolve this conflict.

The Trustee asserts that, because this is a bankruptcy case (and therefore a federal question case with exclusive jurisdiction in federal court), the Court must apply federal choice of law rules. Opposition, at 14-15 citing *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995); Restatement (Second) of Conflict of Laws, §§ 6 ("more significant relationship" factors), 306 (law of the state of incorporation governs breach claims unless some other state has a "more significant relationship").

---

[2]   As noted above, the parties filed supplemental pleadings on January 5, 2024 and January 10, 2024 regarding a recent decision of the Tenth Circuit Court of Appeals discussing the adverse domination doctrine and Colorado law.  Adv. Dkt. 220, 221.

1    The Trustee argues California has the "more significant relationship" to the Debtor and the FAC's

2    claims based on the location of its oil and gas wells, the number of California state agencies that

3    are among the largest creditors of the Debtor and a $65 million district court judgment against the

4    Debtor for environmental law violations in California.  Opposition, at 15-16.

5        Grewal argues that the Ninth Circuit decision *In re Lindsay* is inapplicable because it only

6    applies to federal question cases with exclusive jurisdiction in federal court.  *Reply in Support of*

7    *Motion* (the "Reply"), Adv. Dkt. 118 at 8-9.  Grewal asserts this Court's jurisdiction over this

8    adversary proceeding is not *exclusive* but merely *concurrent* and that therefore the Court should

9    apply the forum state of California's choice of law rules, which requires the law of the state of

10   incorporation to govern breach of fiduciary duty claims.  Reply, at 9 *citing* Cal. Corp. Code § 2116

11   ("The directors of a foreign corporation transacting intrastate business are liable to the corporation,

12   its shareholders, creditors, receiver, liquidator or trustee in bankruptcy . . . according to any

13   applicable laws of the state or place of incorporation or organization, whether committed or done in

14   this state or elsewhere . . . .").  Grewal cites two non-bankruptcy cases in support of his assertion

15   that California's choice of law rules should apply:  the concurrence in *Berman v. Freedom Fin.*

16   *Network, LLC,* 30 F.4th 849 (9th Cir. 2022) (violations of the Telephone Consumer Protection Act,

17   47 U.S.C. §227 *et seq*.); and *Newmark Grp. v. Avison Young Can*., *Inc*., 2020 WL 5514156 (D.

18   Nev. Sep. 14, 2020) (action filed in district court regarding a dispute involving counsel for the

19   buyer of assets out of the Grubb & Ellis bankruptcy case).  Neither case establishes that this Court's

20   jurisdiction over this adversary proceeding is "concurrent jurisdiction" or that this Court shares

21   jurisdiction over this proceeding with any state court.

22       The gravamen of the FAC is that Grewal allegedly siphoned off the assets of the Debtor for

23   the benefit of himself and other corporate defendants which he controls.  The FAC asserts causes of

24   action based on these transfers of the Debtor's assets in the form of avoidance actions against the

25   transferees and breach of fiduciary duty claims against Grewal.  The transfers of the Debtor's assets

26   are transfers of property that would be property of the estate but for the allegedly fraudulent or

27   preferential transfers. *Begier v. I.R.S*., 496 U.S. 53, 58 (1990) ("Because the purpose of the

28   avoidance provision is to preserve the property includable within the bankruptcy estate—the

1  property available for distribution to creditors—'property of the debtor' subject to the preferential

2  transfer provision is best understood as that property that would have been part of the estate had it

3  not been transferred before the commencement of bankruptcy proceedings.").  A bankruptcy court's

4  jurisdiction over such actions is based on its jurisdiction over "property . . . of the debtor" and

5  "property of the estate."  28 U.S.C. § 1334(e).  The bankruptcy court's jurisdiction over such

6  property is "exclusive" not concurrent.  *Id.*

7       *In re Lindsay*, arose in an adversary proceeding filed by four related chapter 11 debtors

8  seeking to set aside a prepetition foreclosure sale as a fraudulent transfer.  *In re Lindsay*, 59 F.3d

9  942, 946 (9th Cir. 1995); *In re Lindsay*, 98 B.R. 983, 984 (Bankr. S.D. Cal. 1989).  To decide

10  whether the foreclosure sale was conducted in a manner that complied with state law, the Ninth

11  Circuit had to decide whether California or Texas law governed the foreclosure.  *Lindsay*, 59 F.3d

12  at 948.  The Circuit held that the "rule in diversity cases, that federal courts must apply the conflict

13  of laws principles of the forum state . . . does not apply to federal question cases such as

14  bankruptcy."  *Id*.  Instead, in "federal question cases with exclusive jurisdiction in federal court,

15  such as bankruptcy, the court should apply federal, not forum state, choice of law rules." *Id*.  The

16  Circuit explained that in bankruptcy cases, "the risk of forum shopping which is avoided by

17  applying state law has no application, because the case can only be litigated in federal court. The

18  value of national uniformity of approach need not be subordinated, therefore, to differences in state

19  choice of law rules." *Id*.

20       The Ninth Circuit continues to follow *Lindsay* in appeals from adversary proceedings in

21  bankruptcy cases.  *In re Cuker Interactive, LLC*, 2022 WL 612671, at *1 (9th Cir. Mar. 2, 2022),

22  *cert. denied sub nom. Cuker Interactive, LLC v. Pillsbury Winthrop Shaw Pittman, LLP*, 143 S. Ct.

23  1054 (2023) (adversary proceeding addressing validity of a lien) ("Because this is a bankruptcy

24  proceeding, federal choice-of-law rules determine which state's substantive law applies. *In re*

25  *Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995). . .  Although Cuker claims that *Lindsay* was wrongly

26  decided, it binds us as a three-judge panel.").  This proceeding, like the adversary proceeding in

27  *Lindsay*, arises in a bankruptcy case, and, as such, this Court is bound by *Lindsay* and must apply

28  federal choice of law rules.

14

### 5. Federal Choice of Law Rules

Federal choice of law rules follow the Restatement (Second) of Conflict of Laws. *PNC Bank v. Sterba (In re Sterba)*, 852 F.3d 1175, 1179 (9th Cir. 2017). As the Trustee correctly argues, section 306 of the Restatement provides:

> The obligations owed by a majority shareholder to the corporation
> and to the minority shareholders will be determined by the local law
> of the state of incorporation, except in the unusual case where, with
> respect to the particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the parties and the
> corporation, in which event the local law of the other state will be
> applied.

Restatement (Second) of Conflict of Laws, § 306.

Resolution of whether Colorado law or California law applies to the breach of fiduciary duty claim requires consideration of the factors relevant to determining which states has a "more significant relationship:"

> The factors relevant to the choice of the applicable rule of law
> include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative
> interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6. These factors are necessarily fact-intensive and the relevant facts cannot be found within the four corners of the FAC. For example, the Trustee argues California has a more significant relationship based on, among things, the fact that "Debtor's

15

1  harmful conduct in California is well-documented." Opposition, at 16. These "well-documented

2  facts" do not appear in the FAC. The Trustee also refers to a recent judgment against the Debtor

3  for violations of federal and California environmental laws. *Id.* At the pleading stage, the Court can

4  take judicial notice of the entry of the judgment, but it is far from clear that the conduct alleged in

5  the FAC has any relationship to that judgment. A more fulsome factual record is required to

6  conduct a meaningful choice of law analysis. Therefore, the Court will defer its ruling on whether

7  Colorado law or California law governs the breach of fiduciary duty claims until the parties have

8  had a sufficient opportunity to conduct discovery and to submit evidence and further briefing on

9  the issue.

10     The Motion is denied as to the breach of fiduciary duty claim but without prejudice to

11  Grewal renewing his arguments regarding whether Colorado or California law applies and his

12  arguments based on Colorado law.[3]

13     **B.  Aiding and Abetting Breach of Fiduciary Duty Against Olivares**

14     Olivares argues that the aiding and abetting a breach of fiduciary duty claim against him

15  must be dismissed because it fails to allege facts that satisfy the elements of such a claim under

16  Colorado law and is time-barred under Colorado law. Motion, at 22-23. The Trustee contends

17  California law applies and that the FAC is adequately pled. Opposition, at 23. Until the Court

18  determines whether Colorado law or California law governs the breach of fiduciary duty claims

19  against Grewal, it is premature to determine whether the aiding and abetting claim against Olivares

20  is adequately pled.

21     Olivares also argues that the aiding and abetting claim fails based on the in pari delicto

22  doctrine. He asserts that because Grewal is a sole shareholder, Olivares' conduct as agent is

23  imputed to Grewal as principal, that the Debtor and Olivares are deemed "in pari delicto" and

24  therefore the Trustee cannot assert the Debtor's claims against Olivares. Motion, at 22. In

25  Opposition, the Trustee renews his "trust fund doctrine" argument that Grewal breached duties

26  _____

27  [3]  Grewal's arguments that the heightened pleading standard of Rule 9(b) applies to the breach of
fiduciary duty claims and that the FAC breach allegations fall short of this standard are also denied.
28  Even if Rule 9(b) applies, the FAC alleges with sufficient detail and specificity the principal
breaches on which the breach of fiduciary duty claim is based.

1    owed to the Debtor's creditors once the Debtor became insolvent and California law permits

2    receivers to assert claims which would be barred by the in pari delicto doctrine if they were

3    asserted by the insolvent debtor.  Opposition, at 24.  In his Reply, Olivares contends that while the

4    doctrine does not apply to receivers, it clearly applies to bankruptcy trustees, citing *Goldman v.*

5    *Dardashti (In re Tootian)*, 634 B.R. 361 (Bankr. C.D. Cal. 2021).[4]

6          Under the in pari delicto doctrine, "a plaintiff who has participated in wrongdoing cannot

7    recover when he suffers injury as a result of the wrongdoing." *First Beverages, Inc. of Las Vegas v.*

8    *Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir. 1980).  Whether it applies to the FAC's

9    claim against Olivares, depends upon whether it is available under the law of the state that governs

10   the breach of fiduciary duty claim and whether that state recognizes a "trust fund doctrine"

11   allowing creditors of an insolvent corporation to sue for breaches of fiduciary duty.  Whether that is

12   Colorado law or California law cannot be determined at this time.  Additionally, Olivares relies on

13   *USACM Liquidating Tr. v. Deloitte & Touche*, 754 F.3d 645 (9th Cir. 2014), which applied Nevada

14   law, and therefore is inapplicable to the breach of fiduciary duty claims in the FAC.  Olivares'

15   reliance on *In re Tootian* is similarly misplaced as the District Court reversed the bankruptcy court

16   on the in pari delicto doctrine:

17                 Turning to the third issue and whether the in pari delicto doctrine

18                 prevents the Trustee from bringing her common law fraudulent

19                 transfer claims, the Court again disagrees with the Bankruptcy Court.

20                 . . . 11 U.S.C. § 544(b)(1) states that a "trustee may avoid any transfer

21                 of an interest of the debtor in property or any obligation incurred by

22                 the debtor that is voidable under applicable law by a creditor holding

23                 an unsecured claim." (emphasis added) Section 544 plainly permits a

24                 bankruptcy trustee to brings claims under applicable state law that an

25                 unsecured creditor may bring. The Trustee is not attempting to bring

26                 a claim for the benefit of the Debtors but in favor of the unsecured

27   _____

28   [4]  The Reply erroneously identifies the name of the underlying bankruptcy case as "In re
     Melamed."

1    creditor Mazakoda. The Court therefore finds that the doctrine of in

2    pari delicto is inapplicable for claims brought under Section 544, as

3    here.

4    *In re Melamed*, 2022 WL 20727998, at *5 (C.D. Cal. Mar. 23, 2022), *adopted* 2023 WL 6476170

5    (C.D. Cal. Feb. 2, 2023) (reversing and remanding).

6    If the Court later concludes that California law applies, such that the trust fund doctrine and

7    section 544(b) permit the Trustee to assert breach of fiduciary duty claims which could have been

8    brought by an unsecured creditor, then the in pari delicto doctrine would be inapplicable pursuant

9    to *In re Melamed*. Alternatively, if the Court later concludes that Colorado law applies, and that

10    Colorado law does not recognize the trust fund doctrine, then the in pari delicto doctrine may bar

11    the aiding and abetting claim against Olivares.

12    The Motion is denied as to the aiding and abetting a breach of fiduciary duty claim but

13    without prejudice to Olivares renewing his arguments regarding the in pari delicto doctrine.

14    **C. Fraudulent Transfer Causes of Action Against Grewal**

15    The FAC alleges that various transfers by the Debtor to GRL, CAP and GIT are avoidable

16    as fraudulent transfers under either bankruptcy law or non-bankruptcy law and seeks avoidance and

17    recovery of those transfers from GRL, CAP and GIT. FAC, ¶¶ 58-72, 100, 106, 111, 116. The

18    FAC also asserts claims under section 550 of the Bankruptcy Code against Grevino and CDG

19    seeking to recover the value of assets transferred by the Debtor to a third party to fund the purchase

20    of the Vineyard. FAC, ¶¶ 53, 54. The FAC does not allege that Grewal was an initial, immediate

21    or mediate transfer of any of these transfers. Instead, it seeks recovery from Grewal on the

22    fraudulent transfer claims based on allegations that GRL, CAP and GIT are alter egos of Grewal.

23    FAC, ¶ 73. The FAC seeks to hold Grewal personally liable for the claims against Grevino and

24    CDG under an alter ego or single business enterprise theory of liability. FAC, ¶¶ 16, 21.

25    Grewal argues that the fraudulent transfer claims (Causes of Action Three through Six)

26    against him must be dismissed for three reasons: First, the claims are time-barred, and the Trustee

27    cannot use the IRS as the "triggering creditor" under section 544(b) of the Bankruptcy Code to

28    avoid transfers ten years prepetition, and, even if he could, the FAC fails to allege that the IRS held

a claim against the Debtor at the time of each transfer and that the IRS' claim remained unsatisfied on the Petition Date. Motion, at 24–38. Second, the claims based on section 548(a) of the Bankruptcy Code fail because no transfers are alleged to have occurred within two years of the Petition Date. Motion, at 40. Finally, the claims alleging actually fraudulent transfers are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure and fail to meet this standard. Motion, at 38.

The Trustee contends Grewal's statute of limitations arguments are premature because the defense is not obvious on the face of the FAC. Opposition, at 26. He also argues that California law governs the fraudulent transfer claims, which includes a "discovery rule" that delays the running of the usual four-year lookback period until the fraudulent nature of the transfer (or obligation) "could reasonably have been discovered" and that the outside limit to avoid transfers under California law is seven years. Opposition, at 24-25 citing Cal. Civ. Code § 3439.09 and *Ezra v. Seror (In re Ezra),* 537 B.R. 924, 934 (B.A.P. 9th Cir. 2015). He contends he can reach transfers occurring more than seven years before the Petition Date because section 544(b) of the Bankruptcy Code and section 6502 of the Internal Revenue Code, taken together, give him a ten-year lookback period. Opposition, at 25-30. Finally, the Trustee asserts the intentional fraudulent transfer claims are sufficiently pled. Opposition, at 31-32.

### 1. Because the FAC Does Not Present a Facial Statute of Limitations Issue Litigation of Grewal's Statute of Limitations Defense is Premature.

As a threshold matter, there is no requirement that a complaint anticipate, and plead around, an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 215-216 (2007) (complaint need not allege or demonstrate exhaustion of administrative remedies as exhaustion is an affirmative defense); *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co*., 931 F.3d 966, 972 (9th Cir. 2019) ("Rule 8 does not require plaintiffs to plead around affirmative defenses."). *See also, Lusnak v. Bank of Am., N.A*., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact."). Rule 8 of the Federal Rules of Civil Procedure expressly denominates the statute of limitations as an affirmative defense. Fed. R. Civ. P. 8(c); *Jones*, 549 U.S. at 216 ("A complaint is

subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense.").  Therefore, the FAC is not required to anticipate, and plead around, a statute of limitations defense, and there is no basis for dismissing the FAC on such grounds.

In the Ninth Circuit, a claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations "only when the running of the statute is apparent on the face of the complaint." *Holt v. County of Orange*, 91 F.4th 1013, 1017 (9th Cir. 2024) *quoting United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc*., 720 F.3d 1174, 1178 (9th Cir. 2013) and *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).[5]  As detailed below, it is not apparent from the face of the FAC that all possible limitations periods have run such that dismissal of the fraudulent transfer claims is warranted.

### 2. State Law May Permit the Trustee to Avoid Transfers Made After July 25, 2012.

Under California law, a constructively fraudulent transfer claim must be brought within four years, but an actually fraudulent transfer claim may be brought more than four years after the transfer so long as it is brought "not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cal. Civ. Code § 3439.09(a).  Such a claim, however, must be brought within seven years of the transfer.  Cal. Civ. Code § 3439.09(c). Therefore, relying only on section 544(b) of the Bankruptcy Code and California law, the Trustee

---

[5]  "Also, statute-of-limitations issues that turn on disputes of fact generally are better addressed at summary judgment, not through a motion to dismiss." *Doe 1 v. Univ. of San Francisco*, 2023 WL 5021811, at *10 (N.D. Cal. Aug. 4, 2023) *citing  Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (a motion for summary judgment is the proper procedure to evaluate the expiration of the statute of limitations when the inquiry turns on disputed facts, including equitable tolling doctrines, rather than a motion to dismiss under Rule 12(b)(6)).

1    may be able to avoid transfers made after July 25, 2012.[6]  The FAC alleges numerous transfers

2    occurred after this date, including the Overriding Royalty payments made between July 25, 2012

3    and 2018 — $330,346 of which was transferred after July 25, 2018 (FAC, ¶ 59), cancellation of the

4    $79 million GIT Note in 2013 (FAC, ¶ 65) and the payments to CAP under a 2015 agreement, and

5    an amended 2019 agreement (FAC, ¶ 70).  The only transfers alleged to have occurred prior to July

6    25, 2012 are the Overriding Royalty payments made between 2010 and this date (FAC, ¶ 59) and

7    the assignment of the Debtor's leases to a third party in February or March of 2012 in connection

8    with the Vineyard purchase (FAC, ¶ 51, 68).  Therefore, regardless of Grewal's arguments

9    regarding the IRS as a trigger creditor and section 6502 of the Internal Revenue Code, a significant

10   number of the transfers may fall within the available lookback period under California law.

### 3.  If the IRS Is an Unsecured Creditor on the Petition Date, the Trustee May Stand in the Shoes of the IRS and Pursue Claims the IRS Could Pursue Outside of Bankruptcy.

14          Section 544 of the Bankruptcy Code grants trustees derivative standing to pursue causes of

15   action that can be pursued by unsecured creditors of the debtor, for the benefit of the bankruptcy

16   estate.  11 U.S.C. § 544.  If an actual unsecured creditor could avoid a transfer of a debtor's asset

17   outside of bankruptcy, a trustee can use section 544(b) to recover that asset for the estate.  11

18   U.S.C. § 544(b).

19          By its terms, Section 544(b)(1) requires the existence of an actual

20          creditor who could avoid the transfer. 5 Collier on Bankruptcy ¶

21          544.01. In other words, the effect of this section is 'to clothe the

22          trustee with no new or additional right in the premises over that

23          possessed by a creditor, but simply puts him in the shoes of the

24          latter.' Id. ¶ 544.06[3] (*quoting Davis v. Willey*, 263 F. 588, 589

25          (N.D. Cal. 1920), *aff'd*, 273 F. 397 (9th Cir. 1921)); *see also*

---

27   [6]  Grewal asserts that Colorado law, not California law, governs these claims.  For the reasons
28   detailed above, the Court cannot determine at the pleading stage which state's laws govern these claims.

*Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1201 (9th Cir.

2005). '[I]f the actual creditor could not succeed for any reason—

whether due to the statute of limitations, estoppel, res judicata,

waiver, or any other defense—then the trustee is similarly barred and

cannot avoid the transfer.' [*In re Equipment Acquisition Resources,*

*Inc.*, 742 F.3d 743, 746 (7th Cir. 2014)]; *accord In re Acequia, Inc.*,

34 F.3d 800, 809 (9th Cir. 1994) ('[l]ike Prometheus bound, the

trustee is chained to the rights of [such] creditors').

*Zazzali v. United States (In re DBSI, Inc.),* 869 F.3d 1004, 1009 (9th Cir. 2017).  The actual

unsecured creditor of the debtor existing on the petition date is often referred to as the "triggering

creditor."  *Id.* at 1010.

The Trustee contends section 544(b) of the Bankruptcy Code, combined with section 6502

of the Internal Revenue Code, work together to allow bankruptcy trustees to avoid fraudulent

transfers within ten years of the petition date so long as the IRS is the triggering creditor.

Opposition, at 25.  Section 544(b) allows a trustee to rely on "applicable law" to avoid a fraudulent

transfer.  The Trustee relies on section 6502 as the "applicable law" authorizing him to go back ten

years.  Section 6502 provides, in pertinent part:

(a) Length of period.--Where the assessment of any tax imposed by

this title has been made within the period of limitation properly

applicable thereto, such tax may be collected by levy or by a

proceeding in court, but only if the levy is made or the proceeding

begun--

(1) within 10 years after the assessment of the tax . . .

26 U.S.C. § 6502(a)(1).

The FAC alleges that the IRS was an unsecured creditor on the Petition Date and filed a

proof of claim against the estate.  FAC, ¶¶ 31, 32, 99, 105.  To determine whether section 544(b)

permits the IRS to be the triggering creditor (and whether section 544(b) permits the Trustee to rely

on section 6502 of the Internal Revenue Code to pursue claims that could be pursued by the IRS)

1    the Court starts with the language of the statute. *Lamie v. United States Tr.*, 540 U.S. 526, 534

2    (2004).  When the statute's language is plain, the court's "sole function is to apply the law as we

3    find it."  *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) *quoting Lamie*, 540 U.S. at 534.

4    Section 544(b) provides:

5            (1) Except as provided in paragraph (2), the trustee may avoid any

6            transfer of an interest of the debtor in property or any obligation

7            incurred by the debtor that is voidable under applicable law by a

8            creditor holding an unsecured claim that is allowable under section

9            502 of this title or that is not allowable only under section 502(e) of

10           this title.

11           (2) Paragraph (1) shall not apply to a transfer of a charitable

12           contribution (as that term is defined in section 548(d)(3)) that is not

13           covered under section 548(a)(1)(B), by reason of section 548(a)(2).

14           Any claim by any person to recover a transferred contribution

15           described in the preceding sentence under Federal or State law in a

16           Federal or State court shall be preempted by the commencement of

17           the case.

18   11 U.S.C. § 544(b).

19         Nothing in section 544(b) can be construed to exclude the IRS (or any governmental unit)

20   from being the "creditor holding an unsecured claim."  The only requirement is that the creditor

21   hold an allowable unsecured claim.  Elsewhere in the Bankruptcy Code, Congress has provided

22   different treatment to holders of tax claims, and if it intended to exclude the IRS from section

23   544(b) it could have done so.  *See e.g.,* 11 U.S.C. §§ 346, 362(b)(9), 503(b)(1)(B), 505, 507(a)(8),

24   511, 523(a)(1), 724(b), 1146. *See also Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570

25   B.R. 816, 825 (Bankr. D. Idaho 2017) ("The language of § 544(b)(1) also does not restrict which of

26   a debtor's actual creditors a trustee may choose as a vehicle to avoid a transfer, except that such

27   creditor must hold an unsecured claim that is allowable under § 502, or not allowable only under

28   § 502(e). . . Thus, under the plain language of § 544(b)(1), Trustee may step into the shoes of IRS

1    and, accordingly, may invoke any 'applicable law' that IRS could use outside of bankruptcy to

2    avoid the targeted transfers to the defendants.").  Similarly, nothing in section 544(b) can be

3    construed to exclude the Internal Revenue Code from the "applicable law" on which a trustee may

4    rely.  *Id.*, at 825-26 ("Attributing a broad reading to 'applicable law' is in line with the purpose of

5    § 544(b)(1), and the expansive rights it provides to bankruptcy trustees. . . there is no reason, based

6    upon the phrase's plain meaning, that Congress intended to exclude . . . the IRC from the

7    'applicable law' available to trustees under § 544(b)(1).").

8         "Most courts have held that section 544(b) allows the trustee to step into the shoes of the

9    IRS and enjoy the ten-year statute of limitations in 26 U.S.C. § 6502(a)(1)." *In re Ruby's Diner,*

10   *Inc.*, 2021 WL 4572001, at *2 (C.D. Cal. Jun. 2, 2021) (*dictum*, in denial of defendants' motion to

11   withdraw the reference) *quoting In re CVAH, Inc.*, 570 B.R. at 834 ("[A] clear majority of courts

12   that have considered the question have held that when a bankruptcy trustee steps into the shoes of

13   IRS under § 544(b)(1), the trustee is likewise immune to the time limits in state statutes, just as IRS

14   would be.").  *See also In re Palmieri*, 651 B.R. 349, 355–57 (Bankr. N.D. Ill. 2023) (collecting

15   cases holding that section 544(b) allows trustee to rely on the ten-year period available to the IRS).

16   Indeed, the one decision reaching a contrary decision — *Vaughan Co. v. Ultimate Homes, Inc. (In*

17   *re Vaughn Co.)*, 498 B.R. 297 (Bankr. D.N.M. 2013) —"has been rejected by every other court

18   considering the issue, now a long list." *In re Tops Holding II Corp.*, 646 B.R. 617, 653 n. 106

19   (Bankr. S.D.N.Y. 2022) (collecting cases).

20        The Court agrees with the majority of courts holding that the Trustee may step into the

21   shoes of the IRS and may rely on section 6502 of the Internal Revenue Code to the same extent that

22   the IRS could do so outside of bankruptcy.  On a motion to dismiss, however, the Court concludes

23   that it is premature to address the myriad related issues raised by Grewal, such as: (i) whether

24   section 6502 functions as a lookback period or as a forward looking period based on the assessment

25   date of a tax liability, (ii) whether a tax liability must be owed prior to the transfer, and (iii) if so,

26   whether the same tax liability must remain unsatisfied as of the petition date.  These issues are best

27   assessed at trial, or on summary judgment, after discovery, with the benefit of a fulsome factual

28   record.

1    For purposes of the present motion, the Court finds that the Trustee's well-pleaded

2    allegations are adequate to establish that the Trustee has standing under section 544(b) to seek

3    avoidance of alleged fraudulent transfers within the asserted the ten-year period, standing in the

4    shoes of the IRS. Nothing on the face of the FAC establishes that any of the fraudulent transfer

5    claims is time-barred.  Accordingly, because there is no requirement that the FAC plead around

6    Grewal's statute of limitations defense, Grewal's articulation of that defense is inadequate to justify

7    dismissal at the pleading stage.  *See Jones*, 549 U.S. at 215-216; *U.S. Commodity Futures Trading*,

8    931 F.3d at 972.

9        **4.    The FAC Expressly Alleges that Transfers Occurred Within Two Years of**

10             **the Petition Date.**

11    Grewal contends the avoidance claims based on section 548(a) of the Bankruptcy Code fail

12    because the FAC fails to allege any specific transfers made within two years of the Petition Date.

13    Motion, at 40.  Section 548(a)(1) allows a trustee to avoid fraudulent transfers or obligations made

14    (or incurred) within two years before the petition date.  11 U.S.C. § 548(a)(1).  Any transfer made,

15    or obligations incurred, prior to July 25, 2017 (two years prior to the Petition Date) cannot be

16    avoided under section 548(a) and the Motion is granted as to those transfers and obligations.

17    However, the FAC alleges that the Debtor made Overriding Royalty payments to GRL through

18    2018, which is within two years of the 2019 Petition Date. FAC, ¶ 59.  It also expressly alleges that

19    $330,346 of such payments were made within one year of the Petition Date.  FAC, ¶ 123.  As to

20    these transfers occurring after July 25, 2017, the FAC adequately alleges that some of the transfers

21    occurred within two years of the Petition Date and the Motion is denied.

22        **5.    The Actual Fraud Claims Are Sufficiently Plead.**

23    Grewal contends the stricter pleading standard of Rule 9(b) applies to the actual fraudulent

24    transfer claims, which the FAC fails to satisfy.  Motion, at 38.  As detailed above, whether Rule

25    9(b) applies to actual fraudulent transfer claims is unclear.  *Mihranian*, 2017 WL 2775036, at *7–8

26    (B.A.P. 9th Cir. Jun. 26, 2017) ("We question whether all actual fraudulent transfer claims sound in

27    fraud, because the controlling fraudulent transfer statutes state in the disjunctive that an actual

28    fraudulent transfer occurs when the debtor makes a transfer with the actual intent to hinder, delay

1   or defraud. . .  We do not see why harboring an intent to hinder or delay your creditors would

2   sound in fraud.").  One of the recognized exceptions to the requirements of Rule 9(b) applies where

3   "the facts constituting the circumstance of the alleged fraud are peculiarly within the defendant's

4   knowledge or are readily obtainable by him." *Neubronner*, 6 F.3d at 672; *Englewood Lending*,

5   2009 WL 10670409, at *5–6 (C.D. Cal. Jul. 6, 2009) (relaxing Rule 9(b)'s specificity requirements

6   "because the specific information relating to the purported fraudulent transfer lies" with the

7   defendant).   The FAC alleges in detail that Grewal orchestrated the transfers, managed the Debtor

8   for his own benefit, closely watched all cash expenditures and approved all significant transactions.

9   FAC, ¶¶ 21, 33, 35, 37-39.

10          Accepting these allegations as true, which is required at the pleading stage, the FAC

11   adequately alleges that the circumstances regarding the actually fraudulent transfers are "peculiarly

12   within" Grewal's knowledge or "readily obtainable by him."  Because the Trustee is a stranger to

13   the transfers and the prepetition events, the more liberal standard applied in bankruptcy cases is

14   appropriate.  *Smith*, 175 F.Supp. 3d at 1201 ("A more liberal standard for pleading fraud with

15   particularity is applied in bankruptcy cases. . . . This less stringent standard is predicated upon the

16   fact that it is often the trustee, a third party, who is pleading fraud based on second-hand

17   information").  The allegations in support of the Third and Fifth Causes of Action for actually

18   fraudulent transfers are adequately alleged under this relaxed standard.

19          The Motion is denied as to the fraudulent transfer claims asserted against Grewal.

20          **D.  Preference Cause of Action Against Grewal and Whalen**

21          Grewal and Whalen argue the FAC does not identify any transfers that are avoidable under

22   section 547(b) of the Bankruptcy Code.  Motion, at 41.  The Trustee alleges it is sufficient if the

23   FAC alleges the *types* of transfers sought to be avoided and that details regarding each and every

24   transfer is not necessary, citing *Birdsell v. U.S. West Newvector Grp., Inc. (In re Cellular Express*

25   *of Ariz., Inc.)*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002) ("It may not be necessary for an initial

26   complaint to identify each transfer by check number, date and amount, but at minimum there must

27   be some description of the *types* of transfers sought to be avoided, such as transfers by cash or

28

1   check, transfers of real or personal property, transfers by covering an employee's personal

2   obligations, transfers by a release of obligations owed to the debtor ....") (emphasis in original).

3       In order to state a claim for a preferential transfer against an "insider," a complaint must

4   adequately allege that (1) there was a transfer "of an interest of the debtor in property;" (2) the

5   transfer was "to or for the benefit of" the insider; (3) the transfer was "for or on account of an

6   antecedent debt owed by the debtor before such transfer;" (4) the transfer was made while the

7   debtor was insolvent; (5) the transfer was made within a year of the filing of the bankruptcy

8   petition; and (6) the transfer enabled the insider to receive more than it would have received in a

9   hypothetical chapter 7 bankruptcy case, if the prepetition transfer had not been made. 11 U.S.C. §

10   547(b); see also *Begier v. IRS*, 496 U.S. 53, 56-57 (1990).  A trustee can recover an avoidable

11   preference either from (among others) the initial transferee or from the insider "for whose benefit

12   such transfer was made."  11 U.S.C. § 550(a)(1).

13       Contrary to Grewal and Whalen's assertion that the FAC does not identify any specific

14   transfers, the FAC alleges that Whalen was paid by the Debtor in the year prior to the Petition date

15   for legal services and alleges that the Debtor transferred $330,346 in Overriding Royalty payments

16   to GRL, during the year preceding the Petition Date, and did so pursuant to the antecedent Grewal

17   Employment Contract obligating the Debtor to make such payments and pursuant to Grewal

18   designating GRL to receive the royalty payments as his designee.  FAC, ¶¶ 40, 41, 59, 75, 119,

19   123.  This is sufficient to put both Grewal and Whalen on notice of what transfers form the basis of

20   the preference claim, and that the antecedent debt as to Whalen is based on the legal services she

21   rendered to the Debtor and, as to Grewal, is the Grewal Employment Contract.  Additionally, the

22   FAC adequately alleges that both Whalen, Grewal and GRL were each insiders of the Debtor such

23   that the one-year insider preference period applies.  FAC, ¶¶ 5, 6, 19, 129; 11 U.S.C. §

24   547(b)(4)(B).  Finally, the FAC alleges that, at the time of the payments to Whalen and Overriding

25   Royalty payments to GRL, the Debtor was insolvent and that the payments allowed Whalen and

26   Grewal to receive more than they would have received in a hypothetical chapter 7 bankruptcy.

27   FAC, ¶¶ 62, 131, 132.  These allegations are adequate to allege a claim under section 547(b) of the

28

Bankruptcy Code.  To the extent Whalen and Grewal seek dismissal of the preference claim, the Motion is denied.

### E.  Negligence — Legal Malpractice Cause of Action Against Whalen

Whalen contends the FAC's allegations that Grewal was the Debtor's sole beneficial principal, and a willing participant in all of the wrongful conduct, necessarily means that the Debtor and Whalen are deemed "in pari delicto" and Whalen cannot have any liability to the Debtor for legal malpractice.  Motion, at 42.[7]  The Trustee responds that, just as with his claims against Olivares for aiding and abetting a breach of fiduciary duty, the Trustee is suing on behalf of creditors who are without fault and therefore not subject to defenses such as in pari delicto or unclean hands, so those doctrines cannot bar his legal malpractice claims against Whalen. Opposition, at 41-42.

"Under California law, a client who engages in wrongdoing in reliance on a lawyer's negligent legal advice may be barred by the unclean hands defense or the in pari delicto doctrine from pursuing a claim for legal malpractice."  *In re Est. Fin. Mortg. Fund, LLC*, 565 F. App'x 628, 628–30 (9th Cir. 2014) *citing Chapman v. Superior Court*, 130 Cal.App.4th 261, 29 Cal.Rptr.3d 852, 862–64 (2005); *Blain v. The Doctor's Co*., 222 Cal.App.3d 1048, 272 Cal.Rptr. 250, 256–58 (1990).[8]  "Both federal and state courts in California have applied the in pari delicto defense to dismiss actions filed by bankruptcy trustees against third parties who may have participated with a debtor or a debtor's management in the concealment or dissipation of the debtor's assets prior to the petition date." *In re Yellow Cab Coop., Inc*., 602 B.R. 357, 360 (Bankr. N.D. Cal. 2019).

---

[7]   Whalen also appears to argue that the claim is time-barred as it does not allege any misconduct after July 25, 2015.  Motion, at 41-42.  The FAC, however, expressly alleges misconduct by Whalen in connection with fraudulent transfers to CAP between 2015 and 2019 and fraudulent transfers to GRL between 2015 and 2018.  FAC, ¶¶ 59, 70, 123.  More importantly, as detailed above, the FAC is not required to allege facts to plead around Whalen's statute of limitations defense. *Jones*, 549 U.S. at 215-216; *U.S. Commodity Futures Trading*, 931 F.3d at 972.

[8]   The parties appear to agree that California law governs the legal malpractice claim.  Section 3517 of the California Civil Code generally codifies the doctrine of in pari delicto or unclean hands: "No one can take advantage of his own wrong."

In *In re Crown Vantage*, a post-confirmation liquidating trustee sued various defendants (including law firms and accountancy firms) for wrongful conduct involving a scheme by the debtor's principal to transfer its toxic assets to the debtor for cash and to cause the debtor to borrow in excess of $500 million, all of which was transferred to the debtor's principal. *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *1-3 (N.D. Cal. Sept. 25, 2003), *aff'd sub nom.*, *Crown Paper Liquidating Trust v. Pricewaterhousecoopers LLP*, 198 F. App'x 597 (9th Cir. 2006), cert. denied, 127 S.Ct. 1381 (2007).  The debtor's principal had "sole and complete decision-making power" in planning and executing the scheme.  *Id.*, at *2.  The defendants argued that the liquidating trustee was barred from asserting claims against them under the doctrine of in pari delicto which, where plaintiff is a corporation, "applies if, under agency principles, the unlawful actions of an agent of the corporation are imputed to the corporation." *Id.*, at *6.  The trustee argued that the doctrine of in pari delicto could not be invoked against a bankruptcy trustee. *Id.*  The district court disagreed, holding that the defendants could invoke the defense and reasoning:

> Although the Ninth Circuit has not had occasion to directly address
> the issue, every Circuit to have considered the question has held that
> in pari delicto can be asserted against a trustee bringing a claim on
> behalf of a debtor in bankruptcy. . . when a trustee asserts a claim on
> behalf of a debtor, the trustee proceeds under 11 U.S.C. § 541(a)(1),
> which . . . establishes the estate's rights as no stronger than they were
> when actually held by the debtor, and thus in pari delicto, or any
> other defense available as against the debtor, can be asserted against
> the trustee.

*Id.*

Although the FAC alleges that, prior to 2017, Whalen was an officer of the Debtor, it is evident that the Eighth Cause of Action asserts a legal malpractice claim, not a breach of fiduciary duty claim.  As such, the Trustee's assertion that he is bringing the malpractice claim on behalf of creditors, as opposed to standing in the shoes of the Debtor, is erroneous.  The Trustee fails to cite any authority holding that a creditor of a debtor has standing to sue the debtor's lawyer for

1    malpractice.  The Eighth Cause of Action is not derivative, it is a direct cause of action under

2    section 541(a)(1) by the Trustee on behalf of the Debtor against the Debtor's former lawyer,

3    Whalen.

4        Because Whalen could assert the in pari delicto defense against the Debtor, she may assert

5    it against the Trustee.  It is unclear whether the Trustee could amend his legal malpractice claims to

6    avoid Whalen's in pari delicto defense.  However, because the FAC also alleges that Whalen was

7    an officer of the Debtor prior to 2017 during some of the conduct complained of, the Debtor may

8    have viable breach of fiduciary duty claims against Whalen based on the same conduct depending

9    upon whether California or Colorado law applies and whether that law recognizes a trust fund

10    doctrine.  Additionally, the Trustee may be able to plead sufficient facts to show that an exception

11    to the in pari delicto doctrine applies.  Therefore, the Court grants the Motion as to the legal

12    malpractice claim but with leave to amend.

13        **F.  Unjust Enrichment Against Grewal, Olivares and Whalen**

14            **1.  Olivares and Whalen.**

15        Olivares and Whalen contend the unjust enrichment claim must be dismissed as it expressly

16    states that it is based on their receipt of fraudulent transfers, but the FAC does not allege any such

17    claims against them.  Motion, at 43.  The FAC, however, expressly states that the unjust

18    enrichment claim is based on both the receipt of fraudulent transfers and preferential transfers.

19    FAC, ¶ 149.  The FAC expressly alleges preferential transfer claims against Whalen, which is

20    sufficient.  Whalen contends that each of the alleged preferential transfers "is governed by a

21    contract" between her and the Debtor.  Motion, at 43.  The FAC, however, does not allege the

22    existence of any legal services agreements between Whalen and the Debtor, and therefore nothing

23    on the face of the FAC bars the unjust enrichment claim against Whalen.

24        By contrast, the FAC does not allege that Olivares received or retained anything.  "To

25    allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant

26    received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v.*

27    *Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) citing *Lectrodryer v. SeoulBank*, 77 Cal.App.4th

28    723, 726 (2000).  Because the FAC does not allege that Olivares received, or unjustly retained,

1  anything, it fails to allege sufficient facts to put Olivares on notice of the basis for the unjust

2  enrichment claim against him.

3  **2. Grewal**

4  Grewal argues the unjust enrichment claim must be dismissed against him to the extent it is

5  based on California law as no such cause of action exists.  Motion, at 44.  The Ninth Circuit has

6  allowed unjust enrichment actions by construing them as quasi-contractual claims for restitution:

7  > Some California courts allow a plaintiff to state a cause of action for

8  > unjust enrichment, while others have maintained that California has

9  > no such cause of action. *Compare Prakashpalan*, 223 Cal.App.4th at

10 > 1132, 167 Cal.Rptr.3d 832 (allowing plaintiffs to state a cause of

11 > action for unjust enrichment) *with Durell v. Sharp Healthcare*, 183

12 > Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010) ("There is no

13 > cause of action in California for unjust enrichment.") (internal

14 > quotation marks and citation omitted). While California case law

15 > appears unsettled on the availability of such a cause of action, this

16 > Circuit has construed the common law to allow an unjust enrichment

17 > cause of action through quasi-contract. *See Astiana v. Hain Celestial*

18 > *Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.2015) ("When a plaintiff

19 > alleges unjust enrichment, a court may 'construe the cause of action

20 > as a quasi-contract claim seeking restitution.' ") (*quoting Rutherford*

21 > *Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231, 166

22 > Cal.Rptr.3d 864 (2014)). We therefore allow the cause of action, as

23 > we believe it states a claim for relief as an independent cause of

24 > action or as a quasi-contract claim for restitution.

25 *ESG Cap. Partners, LP*, 828 F.3d at 1038; *Bohbot LLC v. Entrepreneur Consulting Servs., LLC*,

26 2023 WL 9318999, at *4 (C.D. Cal. Nov. 28, 2023) ("[While] the Ninth Circuit has recognized that

27 in California, there is not a standalone cause of action for 'unjust enrichment,' . . .  it has

28 simultaneously permitted courts to 'construe the cause of action as a quasi-contract claim seeking

restitution,' . . . Considering this authority, the court will not dismiss the unjust enrichment claim on the basis no cognizable separate cause of action exists.").  Because unjust enrichment is an action in quasi-contract, the Trustee cannot maintain the claim if there is an enforceable agreement between the Debtor and Grewal defining the rights of the parties regarding the same subject matter. *Paracor Fin. Inc., v. Gen. Elec. Cap. Corp.,* 96 F.3d 1151, 1167 (9th Cir. 1996) (applying both California and New York law).

"Under California law, where claims for unjust enrichment . . . seek to recover money obtained by fraud or mistake, such claims are governed by the [three-year] fraud statute of limitations" of California Code of Civil Procedure section 338(d). *ChinaCast Educ. Corp. v. Chen Zhou Guo*, 2016 WL 6645792, at *5 (C.D. Cal. June 3, 2016) *citing First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1670 (1992); *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008). Grewal contends the FAC fails to allege any transfers or transactions occurring within three years of the Petition Date that could support an unjust enrichment claim against him, except those governed by contracts, and that therefore the claim is barred by the statute of limitations.  Motion, at 45.

The only transfers to, or for the benefit of, Grewal alleged to occur after July 25, 2016, are the Overriding Royalty payments made between July 25, 2016 and 2018, FAC, ¶ 59, and the payments to CAP made between July 25, 2016 and 2019. FAC, ¶ 70.  The FAC, however, expressly alleges that these payments were made on account of the Grewal Employment Contract and on account of a 2015 agreement with CAP that was amended in 2019.  FAC, ¶¶ 40, 70.  The FAC alleges that CAP is the alter ego of Grewal.  FAC, ¶ 21, 73.  Because these payments were made pursuant to contracts to which Grewal (or his alter ego) was a party, they cannot form the basis of an unjust enrichment claim against Grewal.  It is apparent on the face of the FAC that the statute of limitations has run, and therefore the unjust enrichment claim against Grewal may be dismissed at the pleading stage.  *Holt*, 91 F.4th at 1017.

The Motion is denied as to Whalen's request to dismiss the unjust enrichment claim against her.  The Motion is granted as to both Olivares and Grewal with leave to amend.  The Court notes that to the extent California law applies to the unjust enrichment claim, the three-year statute of

1    limitations "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts

2    constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).  The Trustee, therefore, may be

3    able to allege sufficient facts to indicate his unjust enrichment claim is timely.

4        **G.  Declaratory Relief — Alter Ego Cause of Action Against Grewal**

5            **1.  The Trustee Appears to Abandon his Claim that Grewal Is the Alter Ego of the**

6                **Debtor.**

7        Grewal argues that the Trustee lacks standing to assert an alter ego claim on behalf of the

8    Debtor under either Colorado or California law.  Motion, at 46 *citing Ahcom, Ltd. v. Smeding*, 623

9    F.3d 1248, 1252 (9th Cir. 2010); *Amazing Enters. v. Jobin (In re M&L Bus. Mach. Co.)*, 136 B.R.

10   271, 278 (Bankr. D. Colo. 1992).  The FAC alleges that Grewal is the alter ego of the Debtor and

11   that it would be inequitable if he were not held liable for the debts of the Debtor.  FAC, ¶¶ 155-157,

12   159.  The FAC also alleges that Grewal is the alter ego of the corporate defendants and should be

13   held liable for any judgments against them.  FAC, ¶¶ 153-154, 157, 161-162.  The Opposition does

14   not respond to Grewal's contention that the Trustee lacks standing to assert an alter ego claim

15   against Grewal on behalf of the Debtor.  Instead, it only responds to the extent the FAC alleges he

16   is the alter ego of the corporate defendants and construes the FAC as not alleging that Grewal is

17   liable for the Debtor's obligations. Opposition, at 44 ("Defendants cite Ninth Circuit authority for

18   the proposition that California does not recognize an alter-ego claim that would allow a trustee to

19   hold a debtor's shareholders responsible for all of its debts. . . But that is not what the FAC alleges.

20   Rather, it alleges that the Corporate Defendants have committed specific bad acts. . .and that

21   Grewal controlled the Corporate Defendants to such a degree that he should be held jointly liable

22   for those specific bad acts.").  The Court construes this as an abandonment of the Trustee's claim

23   that Grewal is the alter ego of the Debtor, and the Court will dismiss the Eleventh Cause of Action

24   to the extent it relates to the Debtor.

25           **2.  Under Section 544(b), the Trustee Has the Same Standing to Pursue Alter Ego**

26               **Theories as a Triggering Creditor Outside of Bankruptcy.**

27       Grewal contends the Trustee lacks standing to allege that the corporate defendants are the

28   alter ego of Grewal because he lacks standing to allege that Grewal is the alter ego of the Debtor.

1  Grewal believes it is mere "sophistry" to distinguish between a claim that Grewal is the alter ego of

2  the Debtor and a claim that Grewal is the alter ego of the corporate defendants.  Motion, at 46-47.

3  Significantly, Grewal fails to cite any legal authority holding that a trustee lacks standing to assert

4  an alter ego claim against non-debtor defendants, particularly where the claim is based on a

5  trustee's strong-arm powers under section 544(b) of the Bankruptcy Code.  The FAC alleges that

6  Grewal is the alter ego of the corporate defendant transferees of avoidable transfers such that

7  Grewal should be personally liable for any avoidance judgments against the corporate defendants.

8  FAC, ¶¶ 21 ("[T]his action seeks to hold Grewal personal responsible for the actions of the

9  Corporate Defendants under an alter-ego or single business enterprise theory."), 73 ("GIT, CAP

10  and GRL . . . were the alter egos of Grewal, and he should be held personally liable for the

11  Transfers . . . .").  The alter ego claims regarding the corporate defendants, therefore, are entwined

12  with the Trustee's section 544(b) claims.

13  Pursuant to section 544(b), the Trustee can assert any claims under any applicable law that a

14  triggering creditor could assert.  If a triggering creditor could sue the corporate defendants to avoid

15  fraudulent transfers under California law and recover from Grewal on a theory that he is the alter

16  ego of the transferees, then the Trustee has standing to pursue the same claims, and Grewal fails to

17  offer any legal authority to the contrary.  In *In re Turner*, a chapter 7 trustee took over the

18  fraudulent transfer and alter ego claims filed by judgment creditors prepetition.  *In re Turner*, 335

19  B.R. 140, 145 (Bankr. N.D. Cal. 2005) *modified on other grounds*, 345 B.R. 674 (Bankr. N.D. Cal.

20  2006), *aff'd*, 2007 WL 7238117 (B.A.P. 9th Cir. Sep. 18, 2007).  The trustee relied on sections

21  544(b) and 548 of the Bankruptcy Code and section 3439 *et seq*. of the California Civil Code to

22  avoid fraudulent transfers of assets to two corporate defendants.  The bankruptcy court also held

23  that the trustee had established that corporate defendants were the alter egos of the debtor, and on

24  that basis, avoided a fraudulent transfer to the debtor's ex-spouse.  *Id*. at 147.  Therefore, to the

25  extent the Trustee relies on his strong-arm powers, he has the same standing to allege that Grewal

26  is the alter ego of the corporate defendants as a triggering creditor would have outside of

27  bankruptcy.

28

34

**3.  Federal Law Governs Alter Ego Claims Based on Federal Law and California Law Governs Claims Based on California Law.**

Grewal argues that because the Debtor is a Colorado corporation, Colorado law governs the Trustee's alter ego claims.  Motion, at 46.  Because the remaining alter ego claim alleges that Grewal is the alter ego of the corporate defendant transferees, the Debtor's state of incorporation is irrelevant.

> Federal common law generally provides the requirements for piercing the corporate veil as a claim under federal law [and] . . . California law governs as to the [California statutory] claim. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520–21 (9th Cir. 1989).  But "California law on piercing the corporate veil is substantially similar to the [federal common law] rule," so analysis under either rule is the same. *Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc*., 969 F.2d 764, 769 n.3 (9th Cir. 1992).

*Femtometrix, Inc. v. Huang*, 2023 WL 4317357, at *5 (C.D. Cal. Apr. 20, 2023).

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id*. The FAC does not, as Grewal contends, merely recite the elements of an alter ego claim.  It includes specific allegations regarding how Grewal managed cash at the enterprise level channeling funds to entities that benefitted him personally, caused compensation owed on account of his Employment Contract to be paid to GRL in the form of Overriding Royalty payments, such that the corporate defendants had no meaningful independence or separateness from Grewal, existing as mere shells and conduits to conduct his business.  FAC, ¶¶ 35, 37, 40-41, 73, 154, 157.  The FAC sufficiently alleges that Grewal is the alter ego of the corporate defendants.

**4.  A Stay of the Alter Ego Claims Is Not Warranted.**

Grewal requests a stay of all litigation concerning the alter ego claim until the Trustee gets a judgment against the corporate defendants and they fail to satisfy such a judgment; he claims that

1   the Eleventh Cause of Action is asserted at the insistence of UBS as a litigation tactic in unrelated

2   actions.  Motion, at 46.  Grewal does not cite to any legal authority staying or bifurcating an alter

3   ego claim.  The Trustee opposes the request contending it would be neither efficient nor just to do

4   so.  Opposition, at 45.  The gravamen of the FAC is that Grewal controlled and dominated the

5   corporate defendants and the Debtor in pursuit of his scheme to loot the Debtor's assets for his own

6   benefit and for the benefit of his other entities. It would be highly impractical, if not impossible, to

7   parse whether the Trustee is seeking discovery related to his avoidance and breach of fiduciary duty

8   claims versus the alter ego claims.  Grewal's request for a stay is denied.

9          The Motion is granted to the extent the Eleventh Cause of Action asserts that Grewal is the

10  alter ego of the Debtor but denied to the extent it asserts Grewal is the alter ego of the corporate

11  defendants.

12         **H.  Civil Contempt Cause of Action — Automatic Stay Violations Against Grewal,**

13             **Olivares and Whalen**

14         The Individual Defendants argue the Twelfth Cause of Action for violations of the

15  automatic stay must be dismissed because a debtor cannot violate the automatic stay, and they were

16  acting as agent of the Debtor.  Motion, at 49.  The Trustee points out that his civil contempt claim

17  does not seek to hold the Debtor liable for violating the stay, but the Individual Defendants, and

18  that agents of a debtor can be liable for stay violations.  Opposition, at 46.  The FAC clearly seeks a

19  determination that the Individual Defendants, not the Debtor, violated the stay, and they fail to

20  offer any legal authority holding that the officers and attorney for a debtor cannot violate the

21  automatic stay as a matter of law.  The FAC alleges that the Individual Defendants caused GIT to

22  exercise offsets that reduced the funds coming into the estate.  FAC, ¶¶ 164-165.  The right to

23  exercise set off is stayed by section 362(a) of the Bankruptcy Code.  *Citizens Bank of Maryland v.*

24  *Strumpf*, 516 U.S. 16, 18-19 (1995) ("Here it is undisputed that, prior to the bankruptcy filing,

25  petitioner had the right under Maryland law to set off the defaulted loan against the balance in the

26  checking account. It is also undisputed that under § 362(a) respondent's bankruptcy filing stayed

27  any exercise of that right by petitioner.").  If the Trustee establishes that the offsets by GIT violated

28

1    the stay and that the Individual Defendants caused such offsets, their conduct may constitute civil

2    contempt.  The Motion is denied as to the Twelfth Cause of Action.[9]

3    **I.    Civil Contempt Causes of Action — Cash Collateral Orders Against Grewal and**

4    **        Whalen**

5        Whalen contends that "there is no plausible claim" that she violated the cash collateral

6    orders because she was not an officer or employee of the Debtor postpetition.  Motion, at 49.

7    Whalen fails to cite any authority holding that only the Debtor and its employees are bound by cash

8    collateral orders or may be found to have violated such orders.

9        Grewal argues the claim is too vague as it does not identify what specific expenditures to

10    him violated the cash collateral orders.  *Id*.  The FAC alleges that Grewal and Whalen directed

11    Olivares to cause the Debtor to make transfers in October 2019 to Grewal and the corporate

12    defendants and that the relevant cash collateral order specifically forbade insider or affiliate royalty

13    payments, surface lease payments or professional fee payments.  FAC, ¶¶ 174-175.  This is

14    sufficiently detailed, and refers to transfers made within a 30-day time frame, to give Grewal fair

15    notice of the basis of the claim.

16        Grewal and Whalen also argue that the Trustee lacks standing to bring a civil contempt

17    claim based on violations of cash collateral orders because the secured creditor whose cash

18    collateral was misused, not the Trustee, has such standing.  Motion, at 40.  They cite to *In re Count

19    Liberty, LLC*, 370 B.R. 259 (Bankr. C.D. Cal. 2007), in which a creditor requested that the court

20    issue an order to show cause re contempt.  But *Count Liberty* does not hold that only the secured

21    creditor whose cash collateral was misused can make such a request.  Nor do Grewal and Whalen

22    cite any legal authority limiting the subject matter on which a bankruptcy trustee can seek a civil

23    contempt finding.

24

25        [9]    Whalen also argues that providing legal advice, as outside counsel to a debtor, cannot

26    violate the automatic stay.  The FAC, however, does not allege that she merely gave legal advice.
It alleges that she directed Olivares, as CFO of both GIT and the Debtor to offset certain amounts.

27    FAC, ¶ 164.  The extent of her involvement, and whether it amounts to a stay violation, is properly

28    the subject of discovery.

1    Civil contempt is a method for enforcing a court order, not an independent cause of action,

2    so analysis of who has "standing" to bring such a claim is a misnomer. The FAC acknowledges the

3    procedural irregularity of including the contempt claims but states the Trustee is doing so "for

4    purposes of judicial efficiency."  FAC, at p. 27 n. 2.  If the Trustee were to file contempt motions in

5    the main bankruptcy case requesting the issuance of an order to show cause re contempt, such

6    motions are contested matters governed by the substantially same rules that govern this proceeding.

7    Fed. R. Bank. P. 9014(c), 9020.  No purpose would be served by conducting factually related

8    proceedings in both the main case and this proceeding.

9    Finally, Grewal and Whalen complain that the Thirteenth Cause of Action is barred by

10    laches because "all interested parties have been aware of the alleged transfers since October 2019."

11    Motion, at 50.  While Grewal and Whalen may assert at a later stage of this proceeding that the

12    civil contempt claim is barred by laches, it is not a basis for dismissal of the claim at the pleading

13    stage.  Rule 8(c) provides that laches is an affirmative defense.  Fed. R. Civ. P. 8(c)(1).  The FAC

14    is not required to plead around Grewal and Whalen's affirmative defenses.  *Jones*, 549 U.S. at 215-

15    216; *U.S. Commodity Futures Trading*, 931 F.3d at 972.  Because laches is so fact-intensive and

16    "depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of

17    resolution by summary judgment" much less a motion to dismiss under Rule 12(b)(6).  *Couveau v.*

18    *Am. Airlines, Inc*., 218 F.3d 1078, 1083 (9th Cir. 2000).  As such, the Motion is denied as to the

19    Thirteenth Cause of Action.

20                              **VII.    CONCLUSION**

21    Based on the foregoing, the Court rules as follows:

22    The Motion is denied as to the First Cause of Action against Grewal for Breach of Fiduciary

23    Duty.  The denial is with prejudice regarding the applicability of federal choice of law rules but

24    without prejudice to Grewal arguing whether Colorado or California law applies.

25    The Motion is denied as the Second Cause of Action against Olivares for Aiding and

26    Abetting a Breach of Fiduciary Duty but without prejudice to Olivares renewing his arguments

27    regarding the in pari delicto doctrine.

28

1    The Motion is denied as to Third and Fourth Causes of Action for Avoidance of Fraudulent

2    Transfers against Grewal.

3    The Motion is (i) granted as to the Fifth and Sixth Causes of Action for Avoidance of

4    Fraudulent Transfers against Grewal to the extent the transfer occurred, or obligation was incurred,

5    prior to July 25, 2017, and (ii) denied to the extent the transfer occurred after July 25, 2017.

6    The Motion is denied as to Seventh Cause of Action for Avoidance of Preferential Transfers

7    against Grewal and Whalen.

8    The Motion is granted with leave to amend as to the Eighth Cause of Action for Negligence

9    / Legal Malpractice against Whalen.

10    The Motion is denied as to the Tenth Cause of Action for Unjust Enrichment against

11    Whalen but granted with leave to amend to the extent it is asserted against Grewal and Olivares.

12    The Motion is granted without leave to amend as to the Eleventh Cause of Action for Alter

13    Ego findings that Grewal is the alter ego of the Debtor.  The Motion is denied on this cause of

14    action to the extent it seeks a finding that Grewal is the alter ego of the corporate defendants.

15    The Motion is denied as to the Twelfth and Thirteenth Causes of Action for Civil Contempt.

16    ###

17

18

19

20

21

22

23    Date: February 29, 2024

24    

Martin R Barash
United States Bankruptcy Judge

25

26

27

28